TYNDALL (MUCKLER, Intervener) v. PINELAWN CEMETERY (HANEY et al., Interveners).

(Supreme Court, Special Term, New York County.   July, 1914.)

1. JUDGMENT (§ 233*)—PARTIES—CONCLUSIVENESS.

Where one of the several certificate holders in a cemetery brought an equitable action for himself and all others similarly situated, provision in the final judgment should be made to protect the rights of persons similarly situated, where an interlocutory judgment had been entered giving them the right to come in, for after the interlocutory judgment they were bound by the proceedings in the representative action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 412; Dec. Dig. § 233.*]

2. REFERENCE (§ 101*)—REPORT—RECOMMITMENT.

In an action against a cemetery brought by one certificate holder for himself and others similarly situated, where the cemetery claimed that the apparent rights of a large number of the certificate holders did not in fact exist, the referee's report, merely showing such apparent rights, should not be confirmed, but the matter should be sent back to him to take other evidence.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 169–180; Dec. Dig. § 101.*]

3. CEMETERIES (§ 17*)—IMPROVEMENT—EXPENSE.

Where a cemetery sold certificates and also lots, the expense of improving the cemetery is properly chargeable to the lot owners.

[Ed. Note.—For other cases, see Cemeteries, Cent. Dig. § 19; Dec. Dig. § 17.*]

4. CEMETERIES (§ 5*)—CERTIFICATES AND LOTS—DIVERSION OF FUNDS—INTEREST.

Where a cemetery sold certificates and also lots, and moneys belonging to the certificate holders were improperly used for the improvement of the cemetery, the certificate holders were entitled to interest.

[Ed. Note.—For other cases, see Cemeteries, Cent. Dig. §§ 4–8; Dec. Dig. § 5.*]

Action by William D. Tyndall, in his own behalf and all other certificate holders similarly situated, against the Pinelawn Cemetery, in which Clarence E. Muckler intervened as plaintiff, and James P. Haney and others, and Richmond J. Reese, intervened as defendants.  On motion for reargument of the motion to confirm the referee's report and remit the report for further proceedings.  Report returned to the referee.

Gilbert W. Minor, of New York City, for the motion.
Gardner, Tyndall, Barton & Deyo, of New York City (John M. Gardner, of New York City, of counsel), opposed.

GIEGERICH, J.   [1] It is urged by the defendant cemetery that the final judgment cannot do more than direct payment to the plaintiff and to such other certificate holders as have come in and been made parties to the action of the sums respectively due to them, and the case of Atkins v. Trowbridge, reported in 148 N. Y. Supp. 181, is cited as authority for that proposition.  That was an action at law to recover unliquidated damages for the breach of a contract.  Like the present

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

action it was a representative but not a derivative one. It was tried before a jury, and a final judgment was entered upon their verdict. There was no interlocutory judgment, nor any other interlocutory proceedings, by which other persons were given an opportunity to come in as parties or be foreclosed of their rights if they did not come in. The present action is quite different in these respects. It is a representative action in equity. It was entirely under the control of the plaintiff until an interlocutory judgment was entered giving an opportunity to others to come in and make themselves parties. By the interlocutory judgment a mode was prescribed by which such an opportunity was afforded, and that judgment inured to the benefit of all the certificate holders (Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997, 46 L. R. A. 839, and cases cited), and they will be concluded by the final judgment, and since they would be enjoined from prosecuting any other action on their own behalf (Hirshfeld v. Fitzgerald, supra), it is natural and proper that their rights should be provided for and protected by that judgment, if it can be done. If their claims were unliquidated, or were otherwise dependent upon the particular facts underlying each individual claim it would be impossible in the nature of the case to make provision for them in the decree. But here the rights of one certificate holder are apparently precisely the same as the rights of all the others, and the extent of the relief to which they are entitled is dependent only upon the number of shares held by them, respectively, and the referee's report includes a list of the shareholders and of the number of shares held by each. Where the rights of the absent parties are known and ascertained by the proceedings in the action, provision may properly be made for them in the final judgment. Hallett v. Hallett, 2 Paige, 15, 19, 20. In the present case it is only the prima facie rights of the certificate holders that have been ascertained or are ascertainable upon the record as it now stands.

[2] One of the purposes for which it is sought to have the case sent back to the referee for further testimony is that the defendant cemetery may be given an opportunity to show that such apparent rights of some of the certificate holders do not in fact exist. The moving affidavit states that the defendant cemetery can show that 97 per cent. in number and amount of the certificate holders desired and consented and directed that the moneys in question be used as they were used. If it be the fact that some of the certificate holders did so consent to and direct the use of all or any part of the moneys in question, then their respective rights to interest will be wholly defeated or proportionately reduced, as the case may be. So, also, if the defendant cemetery can show that any part of such moneys was used to defray charges which should properly fall upon the half of the proceeds belonging to the certificate holders and not upon the half provided by the statute to be retained by the company for the maintenance of the cemetery, then due effect should be given to that circumstance when the final judgment is entered. It appears to me that the interest of justice requires that the case be sent back to the referee for the taking of evidence on the two points referred to, and an order may be entered accordingly.

[3, 4] The moving papers indicate that a broader scope is desired

in the further proceedings before the referee than testimony on the two points above indicated, and especially that it is sought to show that the course taken by the directors of the cemetery was for the benefit of the property under their control and for the good of all having any interest in that property, including the certificate holders. There is no issue in the case, however, as to the good faith of the directors. In my mind, there is no question that they are honorable and capable men who have acted from the highest motives and in the wisest way to safeguard the interests of all whom they represent. There is no issue as to all that. The point is that they apparently took a mistaken view in some matters as to the relative rights of the two classes of persons they represent. The learned referee has analyzed the situation in his opinion, and has pointed out with admirable clearness the two classes whose interests are involved in this litigation and whose interests are necessarily conflicting in some respects, because the entire proceeds realized from the cemetery property have to be divided between, or for the benefit of, these two classes, the certificate holders on the one hand, and on the other those who have purchased the right to bury their dead in the cemetery grounds. Whatever is paid out to the certificate holders cannot be reserved and used for the maintenance and improvement and embellishment of the cemetery grounds, and whatever is so reserved or used cannot be so paid out. If there was any question as to the relative rights of the two classes, the trustees cannot fairly be blamed for giving the benefit of such doubt to the class least able to organize and protect its rights, and that is apparently what they did. It does not follow, however, that the taking of testimony should be permitted to extend beyond the limits of what is necessary to determine how the proceeds should be apportioned as between the two classes above indicated. The expense of improving the cemetery was properly chargeable against the lot owners' share of the proceeds, and if any part of such expense was, even though temporarily, taken out of the certificate holders' share, that share is entitled to interest for such use, and the fact that the improvement benefited the remaining and unsold portion of the property, and so resulted in ultimate benefit to the certificate holders, to be realized in the form of higher prices on the future sales of lots, is immaterial. The benefit of improvement made with the lot owners' share of the proceeds of sale is something the certificate owners are entitled to anyway under the plan of such organizations provided in the statute. If any part of the certificate holders' share is withheld and temporarily used for such improvements, there is no injustice to the lot owners, when payment finally comes to be made to the certificate holders, in requiring that interest be added. The certificate holders' share has been bearing a burden belonging to the lot owners' share and the latter, in addition to the benefit of such temporary exoneration from its burden, will also receive a further benefit in the form of its share of the increased value of the unsold lots resulting from such improvements.

Motion disposed of as indicated. Settle order on notice.